IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHERYL LOVELL,

                Plaintiff,                      OPINION AND ORDER

v.

                                                  14-cv-708-wmc

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                Defendant.

---

Plaintiff Cheryl Lovell seeks judicial review of a final decision of defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, under 42 U.S.C. § 405(g), which denied her application for Supplemental Security Income and Social Security Disability Insurance benefits. On June 24, 2016, the court heard oral argument regarding plaintiff's contentions that the administrative law judge ("ALJ") failed in the following respects: (1) to obtain a valid waiver of counsel; (2) to include mental limitations assessed by a consulting examiner in the residual functional capacity ("RFC") assessment; (3) to make a proper credibility assessment; (4) to give adequate consideration to the effect of Lovell's obesity on her fibromyalgia; and (5) to assess whether Lovell's combined impairments met or equaled the criteria for Listing 14.09D for arthritis. Because the court agrees that the ALJ failed to obtain a valid waiver of counsel, the case will be remanded for further development of the record with respect to Lovell's mental limitations and reconsideration of the RFC and credibility assessments. While the ALJ's cursory analyses of the relevant listings and Lovell's obesity may not constitute reversible error by themselves, the ALJ should also address both issues on remand more thoroughly.

BACKGROUND

Lovell claims a disability onset date of November 21, 2009, because of chronic pain, fibromyalgia, obesity, and carpal tunnel syndrome. (AR 36, 38-40 and 250-61.) In addition, Lovell testified that she has symptoms of depression and asthma, for which she takes medication. (AR 40-42.) She was 42 years old when she applied for benefits in June of 2011.

Lovell completed a four-year college degree in accounting, earned associate degrees in art and computers, and has past work experience as a nursery school teacher, day care director, order filler, certified nursing assistant, nanny, and clerk. (AR 229.) At the time of the administrative hearing held on June 19, 2013, Lovell had been working three eight-hour shifts a week for two and a half years as a house manager in a transitional living facility for the disabled. (AR 32-33, 229.)

The record contains limited medical information from Lovell's treating providers and no medical records dated before 2011. At the hearing, Lovell explained that she did not have health insurance around the time of her onset date in November 2009, and she could not afford psychological treatment. (AR 40.) However, several consulting physicians submitted opinions concerning Lovell's physical and mental condition.

I. Medical Record and Reports

In May 2011, Lovell sought treatment from a certified physician assistant, Laurie Van Grinsven, for a variety of ailments. (AR 275-83.) Grinsven noted that Lovell was suffering from depression and chronic pain syndrome, and that she likely had fibromyalgia. Although Lovell was treated with several medications, none helped her

depression, insomnia, or pain. (AR 270-74.) Over the next four months, Grinsven reported that Lovell's pain and fibromyalgia was not improving. (AR 263, 266, 323-24.) On August 19, 2011, Lovell told Grinsven that her depression was significantly better, but that she had numbness and pain in both hands.

On August 30, 2011, state agency physician, Dr. Craig Childs, conducted a psychiatric review of Lovell's medical records, concluding that Lovell did not have a severe impairment and only a single episode of major depressive disorder that improved with sleep and pain control. (AR 303-15.) Nevertheless, on September 16, 2011, Grinsven noted that Lovell reported continued pain and numbness in her hands and that her depression was returning. (AR 320-22.) A few months later, on December 22, 2011, Lovell showed no improvement and reported bad depression. (AR 363-64.)

On January 13, 2012, Lovell saw a rheumatologist, Dr. Thomas Bartow. Lovell reported a 10- to 11-year history of generalized pain, numbness in her hands, and a lack of support in her knees and ankles. (AR 353-54.) A physical exam showed a positive Tinel sign bilaterally, along with universally positive fibromyalgia tender points.[1] Dr. Bartow assessed Lovell with fibromyalgia, morbid obesity, asthma, depression, and carpal tunnel syndrome. Bartow noted that her chronic pain was likely to continue and that she was not a candidate for interventions other than an exercise program. Bartow specifically noted that medications had not been effective in controlling her fibromyalgia. (AR 355.)

On January 23, 2012, Dr. Kyla King performed a psychiatric review of Lovell's medical records for the Social Security Administration. She found that Lovell did not

---

[1] Tinel's sign indicates "that a nerve is irritated. Tinel's sign is positive when lightly banginig (percussing) over the nerve elicits a sensation of tingling, or 'pins and needles,' in the distribution of the nerve." http://www.medicinenet.com/script/main/art.asp?articlekey=16687

have a severe impairment and had experienced only a single episode of major depressive disorder that had improved with Cymbalta. King also noted that Lovell did not report any psychiatric difficulties with her daily activities. (AR 328-40.)

In her "self-function report," dated July 6, 2012, Lovell wrote that she could not lift heavy things; stand more than 5 to 10 minutes at a time; write, type, or hold or pick things up because she had lost all feeling in her hands. (AR 221.) Although Lovell stated that she suffered from insomnia and memory loss as a result of her increasing pain and depression, she reported being able to pay attention "forever" and not having any problems following instructions. (AR 221, 226.) She also wrote that she could not work more than 24 hours a week because she could not cope with the pain and had trouble staying awake and remembering things at work. (AR 227.)

In a letter dated August 9, 2012, a sexual assault victim services coordinator also stated that she had seen Lovell weekly for four weeks and would be meeting with her for total of 12 weeks concerning her childhood sexual abuse. (AR 372.) On August 15, 2012, Lovell sought further treatment from Dr. Ruta Pakalns, who noted that Lovell had a history of childhood sexual abuse and had been having panic attacks one or two times a day. (AR 377-78.) Pakalns found that Lovell had fibromyalgia, chronic post-traumatic stress disorder, chronic pain, and panic attacks. (AR 381-82.)

On September 27, 2012, state agency physician Dr. Richard Hulburt conducted a mental status evaluation of Lovell, who reported that she was not taking any pain medication at that time and had nightmares related to past trauma and abuse. (AR 383, 439.) Dr. Hulburt opined that Lovell would not have problems with simple instructions or getting along with supervisors and coworkers, but would have difficulties with

concentration and attention. Hulburt diagnosed her with chronic, complex post-traumatic stress disorder and arrived at a global assessment functioning score of 50, indicating severe symptoms or a serious impairment in functioning. (AR 385, 441-42.)

Finally, on November 21, 2012, state agency physician Dr. Beth Jennings completed a mental RFC assessment, noting that Lovell had a severe mental impairment with the following moderate functional limitations: understanding, remembering, and carrying out detailed instructions; maintaining concentration and attention; completing a normal work day and week without interruption; performing at a consistent pace; and responding appropriately to changes in work setting. In finding Lovell limited to unskilled work, Dr. Jennings gave great weight to Dr. Hulburt's evaluation. (AR 416-18.)

## II. ALJ's Decision

On June 19, 2013, the ALJ held an administrative hearing at which Lovell appeared with non-attorney representative Karen Fleischman. At the hearing, the ALJ did not discuss the fact that Lovell appeared with a non-attorney representative. Instead, the transcript incorrectly identifies Fleischman as an attorney. (AR 27-29.)

The ALJ issued a written decision on July 26, 2013, finding Lovell not disabled. While the ALJ found that Lovell was severely impaired by chronic pain, carpal tunnel syndrome, and obesity, he determined that her impairments, alone or in combination, did not meet or equal the criteria for any listed impairment. (AR 13.) The ALJ also considered Lovell's depression, but determined that it did not constitute a severe impairment. (AR 14-15.)

In light of these findings, the ALJ determined that Lovell had the RFC to perform sedentary work provided she (1) was limited to occasional fine finger manipulations and gross handling; (2) avoided heavy concentrations of fumes, gases, odors, dusts and chemicals; and (3) avoided hazardous heights and dangerous machinery. (AR 15-16.) In reaching this assessment, the ALJ expressly discounted Lovell's statements concerning her other symptoms and limitations because: (1) her statement that "whole days seem to be missing" seemed farfetched given the work she continued to perform and her ability to maintain it for three years; (2) she had very little medical treatment and none of it substantiated her symptoms; (3) although she had fibromyalgia tender points, x-rays of her lumbar spine and left knee show only mild degeneration; (4) while she reported high pain levels in July 2011, her physical examination in September 2011 was normal, and she described her pain as a two out of 10 while on medication; (5) Lovell continues to have a wide range of daily activities (part-time work, living independently, going out with friends, walking, fishing, boating, camping, job hunting, and Tai Chi); (6) she complained about extreme bilateral hand pain in April 2011 but was capable of writing a six-page letter, doing crafts, and made lures a month later; and (7) she had a diagnoses of "probable carpal tunnel syndrome," but no definitive testing. (AR 16-17.)

After considering all of the state consultant medical opinions, the ALJ placed great weight on the opinions of Dr. Childs, Dr. King, and Dr. Lynch, reasoning that Dr. Lynch had observed Lovell during the hearing and that Drs. Childs and King had reviewed the medical record. (AR 14-15.) In contrast, he gave limited weight to the opinions of Dr. Jennings and Dr. Hulburt because they seemed to be based on Lovell's newly alleged report of abuse. The ALJ also noted that Lovell was not on psychiatric medications when

Dr. Hulburt examined her and that her chief complaint was pain and fibromyalgia and not depression or PTSD. (AR 14.)

OPINION

The parties *agree* that the ALJ erred in failing to (a) inform Lovell of her right to counsel at the hearing and (b) obtain her valid waiver of that right. *See* 42 U.S.C. § 406 (claimant has statutory right to counsel at disability hearing); *Ratulowski v. Astrue*, 380 Fed. Appx. 552, 554 (7th Cir. 2010) (claimant can waive right to counsel as long as ALJ fully explains it). Generally, if the ALJ does not obtain a valid waiver of counsel, the case *must* be remanded for a new hearing unless the Commissioner can show "that the ALJ fully and fairly developed the record." *See Binion v. Shalala*, 13 F.3d 243, 245-46 (7th Cir. 1994) (regardless of invalid waiver of counsel, ALJ met duty if she "probes the claimant for possible disabilities and uncovers all of the relevant evidence"). A claimant can obviously rebut the Commissioner's showing by demonstrating an evidentiary gap still remained *or* by showing that the ALJ failed to elicit all relevant information. *Id*.

Here, the Commissioner argues that the ALJ fully and fairly developed the record, while Lovell argues that the ALJ failed to do so in several key areas that were material to his adverse decisions with respect to her mental limitations and credibility. She also argues that the ALJ failed to consider adequately (a) the role of her obesity on other limitations and (b) whether her conditions met or equaled the criteria in Listing 14.09D for inflammatory arthritis. For reasons explained below, the court agrees that the ALJ failed to adequately develop the record with respect to Lovell's mental limitations, which resulted in an incomplete and poorly explained credibility determination and RFC

assessment. While the court remains unconvinced that the ALJ's analysis of the relevant listings and Lovell's obesity require remand by themselves, again for reasons explained, he should take care to address both issues.

## I. Mental Limitations

There are very few medical records discussing Lovell's depression and post-traumatic stress disorder, and there were *no* opinions from her treating physicians on these subjects, but two state agency consulting physicians, Drs. Hulburt and Jennings, concluded that Lovell had a severe mental impairment, as well as *at least* moderate limitations in concentration and attention. Nevertheless, the ALJ chose not to include these limitations in Lovell's RFC for unskilled work, because: (1) Lovell was not on medication at the time Dr. Hulburt examined her; (2) Lovell claimed her "chief" complaint was pain and fibromyalgia, not depression or PTSD; and (3) the physicians based their conclusions (at least in part) on Lovell's "new" claims of past trauma.

The ALJ's explanation for discounting Drs. Hulburt's and Jennings' mental health opinion is left wanting in a number of respects. First, none of these justifications excuse the ALJ's failure to include at least moderate limitations for concentration and attention as part of his formation of Lovell's RFC. *See* Social Security Ruling (SSR) 96-8p (ALJ must consider limitations and restrictions imposed by all impairments, even those that are not found to be severe). Second, not only did the ALJ fail to explain how his justification discredited Dr. Hulburt's opinion, but he reached inappropriate medical conclusions in the process.

8

It is unclear why the ALJ obviously concluded that (1) Lovell's use of medication would have materially improved her mental functioning during Dr. Hulburt's evaluation, *or* (2) she improved after Hulburt's exam because she no longer needed medication. In any case, the ALJ was unqualified to reach these essential, medical opinions, much less use them as a basis for rejecting Dr. Hulburt's findings. Not only are there no facts of record to support he ALJ's conclusions, there is some evidence in the record that antidepressants did *not* help alleviate Lovell's depression.

The ALJ was similarly unqualified to discount Dr. Hulburt's assessment of Lovell's mental limitations simply because she only recently began discussing her childhood trauma or listed her mental impairments as secondary to her fibromyalgia. While the ALJ may have believed that Lovell inaccurately reported her symptoms to Dr. Hulburt, he fails to explain this or cite to any medical authority that would allow him to draw such an inference. In addition to Lovell's self-reported history and symptoms, Dr. Hulburt based his conclusions on a psychological evaluation and a review of her medical records.

Although the ALJ called Dr. Lynch, a psychologist, to testify at the hearing, Lynch testified only briefly and focused on whether Lovell met or equaled the listings for a mental impairment. In turn, Dr. Lynch referenced the opinions of Dr. Childs and Dr. King, but Lynch did not say what portions of the record he reviewed or whether he even considered the findings of Drs. Hulburt and Jennings. Neither did Dr. Lynch examine, test or speak with Lovell about her psychiatric conditions; nor did he discuss any possible limitations resulting from Lovell's depression or PTSD. Lynch only briefly asked Lovell at the hearing if she was taking medication or in counseling for her PTSD. Lovell replied that she was on medication but that was not helping. Finally, to the extent Lovell

responded that she was not in counseling, no one followed up to ask if she could afford treatment, a marked failure by the ALJ given that there was some indication in the record to that effect and Lovell was acting without counsel. (AR 49.)

Moreover, although the non-attorney representative attempted to question Dr. Lynch about Lovell's depression, she got confused and did not do an adequate job. (AR 52.) In fact, *no one* asked about Lovell's concentration and attention, nor about her ability to follow detailed instructions. As a result, the record was not adequately developed with respect to Lovell's depression and PTSD, which certainly contributed to the ALJ's conclusory rejection of the consultative opinions. *Beth v. Astrue*, 494 F. Supp. 2d 979, 1002 (E.D. Wis. 2007) (citing SSR 85–16) (finding prejudice because "[n]o one probed into plaintiff's ability to understand, carry out and remember work-like instructions and respond appropriately to supervision, coworkers and customary work pressures in a work setting, the abilities necessary for unskilled work").

On remand, the ALJ should take care to fully develop the record with respect to Lovell's mental impairments, as well as any limitations that may be associated with them. He should also reconsider the findings of Drs. Hulburt and Jennings and provide good reasons for giving so little weight to their opinions.

## II.  Credibility Determination

Lovell also challenges several of the reasons that the ALJ gave for not finding her subjective complaints to be entirely credible. First, the ALJ drew a negative inference from the fact that Lovell had very little medical treatment. Although a claimant's statements may be considered less credible if her level or frequency of medical treatment

is inconsistent with her level of complaints, the ALJ must first consider any explanations in the record for the claimant's failure to seek treatment. Soc. Sec. Ruling 96-7P.

Here, Lovell testified that she could not afford medical treatment at certain times, and there are notations in her treatment record corroborating her testimony. Although the Commissioner points to various records in an attempt to show that Lovell had insurance by at least December 2011, this only highlights the ALJ's failure to ask Lovell about her insured status during the noted gaps in her treatment. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.").

Second, in reference to Lovell's allegations of chronic pain and fibromyalgia, the ALJ stated that:

> Records indicate . . . she has had x-rays of her lumbar spine and left knee, which show only mild degenerative changes. In July 2011, she reported the pain scale as "too low to reflect the pain," yet [her] examination [at the time] was normal; while in September 2011 she reported a pain level of 2/10 with medication.

(AR 16.) Lovell interprets this discussion as the ALJ relying on objective tests to discount her complaints of fibromyalgia-related pain, a condition which SSA has said lacks objective evidence. *See* SSR 12-2P (noting general lack of objective evidence of fibromyalgia FM and outlining other criteria for its diagnosis, such as history of widespread pain and positive tender points). The Commissioner argues that the ALJ referenced the x-rays to show that Lovell's knee and back pain were not as severe as she alleged.

Unfortunately, the ALJ's statements are too vague and confusing to allow a meaningful review of their importance. Given his apparently related references to

11

fibromyalgia, the ALJ's reliance on "non-confirmatory" x-rays and other "normal" exams appears to conflict with SSR 12-2P. Further, as Lovell points out, an ALJ may *not* dismiss any complaints of pain solely on the ground that there is no diagnostic evidence to support it. *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (citing SSR 96-7p(4)).

Finally, Lovell criticizes the ALJ for finding that she is capable of full-time work based on her ability to work eight-hour shifts on a part-time basis, live independently, go out with friends a few times a week, do Tai Chi, write a six-page letter in 2012, and walk, fish, boat, camp and job hunt in July 2011. *See Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) ("[S]poradic performance [of household tasks] does not establish that a person is capable of engaging in substantial gainful activity."); *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir.2004) ("The weight the [ALJ] gave to Carradine's ability to walk two miles was perverse: not only is it a form of therapy, but it is not a form of therapy available at work.").

The ALJ places too great an emphasis on a few sporadic activities that Lovell did not necessarily perform on a regular basis. As noted, the references to her fishing and camping are also from July 2011, well before her condition worsened in 2012 and 2013, and there are notations in the record that Lovell had to stop fishing because of her pain. Although the ALJ cited Tai Chi as evidence that Lovell could stand, he likely was repeating Dr. Byrd's assumption that doing Tai Chi necessarily means Lovell could stand more than 10 minutes. However, Lovell testified, and previously reported to Physician's Assistant Grinsven, that she could *not* do Tai Chi for more than about 5 minutes. Finally, Lovell points out that her ability to write a six-page letter does not mean that she

does not have severe hand pain, because she does not perform that kind of writing on a regular basis, and could have written the letter over several days.

On remand, the ALJ should reconsider his credibility assessment, explain his findings, *and* support them with citations to substantial evidence in the medical record. He should further take care not to rely on vague or sporadic references to "normal" physical examinations or activities that Lovell is able to perform.

### III. Obesity

Lovell next argues that the ALJ failed to consider her obesity in conjunction with her fibromyalgia, as well as account for any limitations that it caused. Lovell does not note specific any limitations that she believes the ALJ failed to consider with respect to the combined effects of her obesity and fibromyalgia, but presumably she believes that she cannot stand or walk for any length of time.

Moreover, the ALJ found Lovell to be severely impaired by obesity, and he stated without explanation that he considered its potential impact on Lovell's ability to meet a listed impairment. (AR 15.) Yet the ALJ then limited Lovell to sedentary work, at least in part *because of* her obesity. Further, the state agency physicians reviewing Lovell's physical impairments considered her obesity and found her capable of sedentary work. No treating or other examining source stated an opinion about additional limitations required due to either Lovell's obesity or fibromyalgia.

Therefore, although his discussion was cursory, it does not appear that the ALJ necessarily ignored any additional limitations that Lovell's obesity may have caused. Even so, the ALJ should take greater care on remand to explain how he considered

13

Lovell's obesity during all five steps of the sequential evaluation process and the conclusions that he reached.

IV. Listing Analysis

Finally, Lovell argues that the ALJ failed to consider her prima facie showing that her impairments medically equaled Listing 14.09D for inflammatory arthritis.[2] *See* Evaluation of Fibromyalgia, SSR 12-2P (S.S.A. July 25, 2012) ("FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment."). Lovell correctly notes that the ALJ neither identified any particular listing, nor what medical evidence he considered, in finding Lovell's conditions did not equal the criteria for any listed impairment. *See Barnett v. Barnhart*, 381 F.3d 664, 669-70 (7th Cir. 2004) (finding the ALJ's "two sentence consideration of the Listing of Impairments [was] inadequate and warrants remand" where ALJ ignored significant medical history and did not consult medical expert regarding equivalency); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("failure to discuss or even cite to a listing, combined with an otherwise perfunctory analysis, may require remand").

In response, the Commissioner argues that the ALJ's error is harmless because Lovell cannot meet her burden of showing that her conditions medically equal the listing criteria. Because the case is being remanded on other grounds, however, it is not

---

[2] The listing requires repeated manifestations of inflammatory arthritis; plus, two of the following signs: severe fatigue, fever, malaise, or involuntary weight loss; *and* marked limitations in daily activities, social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09.

necessary to decide whether Lovell made the required showing for medical equivalency under Listing 14.09D. On remand, the ALJ is simply directed to consider Listing 14.09 specifically in light of Lovell's fibromyalgia, obesity, mental impairments, and other symptoms. *See Koepp v. Astrue*, 2011 WL 3021466, at *11 (E.D. Wis. July 22, 2011) (remanding because ALJ failed to discuss claimant's fatigue, pain, hand and knee problems, and concentration and attention deficits with respect to medical equivalence of Listing 14.09).

ORDER

Accordingly, IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Cheryl Lovell's application for disability benefits and supplemental security income is REVERSED and REMANDED for further proceedings consistent with this opinion. The clerk of court is further directed to enter judgment for plaintiff and close this case.

Entered this 10th day of January, 2017.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge